IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| RONALD TUSKAN | § | PLAINTIFF |
| | § | |
| v. | § | CIVIL NO.: 1:13cv356-HSO-RHW |
| | § | |
| JACKSON COUNTY, MISSISSIPPI, | § | DEFENDANTS |
| MIKE BYRD, Individually and | § | |
| in his Official Capacity as | § | |
| Sheriff of Jackson County, | § | |
| Mississippi; HOPE THORNTON, | § | |
| Individually and in her Official | § | |
| Capacity as Detective in the | § | |
| Jackson County Sheriff's | § | |
| Department; TRAVELERS | § | |
| CASUALTY AND SURETY | § | |
| COMPANY OF AMERICA, and JOHN | § | |
| OR JANE DOES 1-10 | § | |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY**

BEFORE THE COURT is the Motion for Summary Judgment Based on Qualified Immunity [60] filed by Defendants Mike Byrd and Hope Thornton. The Motion is fully briefed. Having considered the parties' submissions, the record, and relevant legal authorities, the Court is of the opinion that Defendants Byrd and Thornton are entitled to qualified immunity as to Plaintiff's federal law claims. The Motion should be granted.

I. BACKGROUND

A.   Factual Background

On March 8, 2011, Defendant Hope Thornton ("Thornton"), a detective with the Jackson County, Mississippi Sheriff's Office ("JCSO"), received information from

1

the "Children Protection System" advising that Internet Protocol address ("IP address") 174.126.136.2 "had down loaded [sic] what appeared to be child pornography." Investigator's Report 1 [60-1]. Thornton began surveillance of IP address 174.126.136.2, and obtained additional evidence of similar downloads. *Id.* On May 31, 2011, Thornton sent a grand jury subpoena duces tecum to Cable One, Inc. ("Cable One"), the internet service provider related to IP address 174.126.136.2, and on June 1, 2011, Cable One produced information revealing that IP address 174.126.136.2 was assigned to Plaintiff Ronald Tuskan ("Tuskan"). *Id.* at 2.

Thornton proceeded to obtain search warrants for both Tuskan's home and place of employment. *Id.* The search warrant related to Tuskan's place of employment was signed by a County Court judge on June 1, 2011, and listed Northrop Grumman a/k/a Ingalls Shipbuilding, 3943 Denny Avenue, Pascagoula, Mississippi ("Search Warrant - Ingalls"), as the location to be searched, and permitted a search of computers and other electronic equipment, among other areas of Tuskan's office. Search Warrant - Ingalls 1-2 [60-2]. The search warrant for Tuskan's home was dated June 1, 2011, and listed 1902 Miller Street, Pascagoula, Mississippi ("Search Warrant - Miller Street"), as the location to be searched and authorized a search of Tuskan's home and his personal computer located at the home. Search Warrant - Miller Street 1-2 [60-3].[1]

---

[1] At times, the Court will refer to the "Search Warrant - Ingalls" and the "Search Warrant - Miller Street" collectively as the "Search Warrants."

Thornton, along with JCSO Deputy Lonnie Porter ("Porter"), made contact with Tuskan at his place of employment on June 1, 2011, at some time shortly after 11:30 a.m. Dep. of Ronald Tuskan ("Tuskan Dep.") 10:21-11:2 [60-7]. Thornton conveyed to Tuskan that child pornography had been downloaded using his IP address. *Id*. at 14:11-15:2. Tuskan denied having any knowledge of child pornography being downloaded and agreed to allow Thornton to scan his personal computer at his home. *Id*. at 15:3-20. According to Tuskan, he allowed the scan of his personal computer because Thornton "told [him] that it would go better if [he] agree[d]" to allow the scan, and Thornton told him "[t]hat she could get a search warrant within an hour . . . ." *Id*. at 16:5-10. As Tuskan, Thornton, and Porter began to leave to drive to Tuskan's home, Tuskan alleges that Porter prevented Tuskan from driving himself in his own car and directed Tuskan to ride with him. *Id*. at 18:3-19:16. Tuskan complied. *Id*.

Once at Tuskan's home, Thornton and another JCSO investigator performed a scan of Tuskan's personal computer. *Id*. at 19:20-20:3. At some point after Thornton had entered Tuskan's home, Thornton discovered that Tuskan had installed a internet router which provided wireless access to Tuskan's internet connection to computers and devices within 250 feet of Tuskan's home. *Id*. at 19:20-20:3, 24:1-7. The scan of Tuskan's personal computer did not reveal any child pornography on the computer. *Id*. at 21:22-25. Thornton, however, suspected that any of Tuskan's neighbors within 250 feet of his home could have used Tuskan's wireless internet

3

router to gain access to the internet because the wireless internet signal was not password protected. *Id*. at 24:1-7; Investigator's Report 3 [60-1]. Thornton and the other JCSO personnel then left Tuskan's home and went to his next door neighbor's house, where the investigation continued. Tuskan Dep. 24:1-7 [60-7]; Investigator's Report 3 [60-1]. Porter then gave Tuskan a ride back to work and Tuskan returned to work by 2:30 p.m. Tuskan Dep. 24:17-25:15 [60-7]. Tuskan was not disciplined in any way by his employer following the incident. *Id*. at 30:2-17.

Tuskan acknowledges that he has no personal knowledge as to whether Byrd was personally involved in the investigation of Tuskan. Tuskan Dep. 29:23-30:1 [60-7]. According to Thornton, she "did not receive any instructions from [Sheriff] Mike Byrd to investigate or arrest [Tuskan], nor did [she] ever speak with Mike Byrd regarding the investigation of [Tuskan]." Thornton Aff. ¶ 7 [60-8]. Absent from the record is any evidence that Byrd was involved in the investigation of Tuskan at any point in time. *See* Investigator's Report 1-6 [60-1]; Tuskan Dep. 26:13-27:22, 29:23-30:1 [60-7]; Thornton Aff. ¶¶ 1-9 [60-8].

B.  <u>Procedural Background</u>

Tuskan filed the Complaint [1] in this case on September 11, 2013, advancing claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1988. Compl. 1-10 [1]. The Complaint alleges that Defendants violated Tuskan's right to be free from false arrest as provided by the Fourth and Fourteenth Amendments to the United States Constitution, his right to be free from unreasonable seizures under the Fourth and Fourteenth Amendments, and his right not to be deprived of liberty without due

process of law as guaranteed by the Fifth and Fourteenth Amendments. *Id*. at 11-12. Tuskan appears to advance a claim for abuse of process under both federal and state law, a claim for "violation of civil rights" claiming that Defendants also "violated [Tuskan's] right of free speech, to be free from unreasonable seizure, kidnapping, false imprisonment, and the right to due process of law, as secured by the First, Fourth, and Fourteenth Amendments[,]" and a claim for "conspiracy and neglect" under federal law.[2] *Id*. at 13-16, 17-18. Tuskan further asserts Defendants violated his right to remain silent provided by the Fifth Amendment. *Id*. at 17. As to Jackson County, Tuskan seems to raise a claim under the Mississippi Tort Claims Act, Mississippi Code Annotated §§ 11-46-1 to -23 ("MTCA"), and a claim for § 1983 liability based on a theory of respondeat superior. *Id*. at 19-20.

Byrd and Thornton now seek summary judgment as to Tuskan's claims against them in their individual capacities on the basis of qualified immunity. Mem. in Supp. of Mot. for Summ. J. Based on Qualified Immunity 6-18 [61]. Byrd and Thornton contend that the "intra corporate conspiracy doctrine" precludes Tuskan's claim for "civil conspiracy and neglect" made pursuant to §§ 1985 and 1986. *Id*. at 6-8. As for Tuskan's claim for abuse of process under both federal and state law and claim for malicious prosecution under federal law, Byrd and Thornton contend that they are entitled to summary judgment because the Fifth Circuit Court of Appeals

---

[2] Plaintiff's apparent assertion under § 1983 of a claim for "kidnapping" is suspect at best. Compl. 15 [1]. Plaintiff cites no legal authority indicating that this is a cognizable claim under § 1983. Assuming it were, any allegations supporting a § 1983 kidnapping claim are subsumed by Plaintiff's § 1983 claims for false arrest and false imprisonment.

does not recognize a freestanding claim for either malicious prosecution or abuse of process, and to the extent Tuskan asserts a claim for abuse of process under Mississippi law, Byrd and Thornton maintain that there is no evidence that either Defendant possessed an ulterior motive as required to support such a claim.[3] *Id*. at 8-11. Byrd and Thornton contend that Tuskan has abandoned any claim he may have asserted in the Complaint for violation of his First Amendment right to free speech and Fifth Amendment right to remain silent. *Id*. at 11. According to Byrd and Thornton, Tuskan's remaining claims advanced in Counts One, Two, Four, and Five of the Complaint "essentially boil down to a Fourth Amendment claim for false arrest[] and a Fourteenth Amendment due process claim for false imprisonment[,]" to which Byrd and Thornton claim entitlement to qualified immunity. *Id*. at 11-18.

## II. DISCUSSION

A.  Legal Standard

The defense of qualified immunity shields governmental officials from civil liability for damages based upon the performance of discretionary functions if the officials' actions did not violate clearly established constitutional or statutory law of which a reasonable person in their position would have known. *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006) (per curiam). "[T]he usual summary judgment burden of proof is altered in the case of a qualified immunity defense." *Michalik v.*

---

[3] Although Byrd and Thornton's Motion for Summary Judgment [60] invokes the doctrine of qualified immunity, the Court will consider Byrd and Thornton's argument related to Tuskan's state law abuse of process claim given that Tuskan does not appear to contest Byrd and Thornton's inclusion of argument related to the state law abuse of process claim, and given the fact that there does not appear to be a dispute in the evidence related to that claim.

*Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik*, 422 F.3d at 262).

Although all inferences are drawn in a plaintiff's favor, "[t]he plaintiff bears the burden of negating qualified immunity . . . ." *Id*. "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (per curiam). "The court has no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). "Rather, the party opposing summary judgment [must] identify specific evidence in the record and [to] articulate precisely how this evidence supports his claim." *Id*.

A two-pronged inquiry informs the qualified immunity analysis. *Rockwell v. Brown*, 664 F.3d 985, 990-91 (5th Cir. 2011) (citation omitted). The first prong concerns "whether an official's conduct violated a constitutional right of the plaintiff" while the second asks "whether that right was clearly established at the time of the violation." *Id*. at 991. "[A] court may conduct the two-pronged qualified immunity inquiry . . . in any sequence." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

Qualified immunity presents a question of law for the court rather than a question of fact for the jury. *Callahan*, 623 F.3d at 253.

"[T]he test for immunity is solely one of objective reasonableness, any 'subjective intent, motive, or even outright animus [is] irrelevant in a determination of qualified immunity based on arguable probable cause to arrest, just as an officer's good intent is irrelevant when he contravenes settled law.'" *Scribner v. Dillard*, 269 F. Supp. 2d 716, 720 (N.D. Miss. 2003) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000)). "Even if law enforcement officials erred in concluding that probable cause existed to arrest [the § 1983 plaintiff], they would be entitled to qualified immunity if their decision was reasonable, albeit mistaken." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) (per curiam). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who violate the law.'" *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir. 1994) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam)). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Callahan*, 623 F.3d at 253.

B.  Analysis

   1.  Claims Which Tuskan Has Conceded or Abandoned

As an initial matter, the record reveals that several of Tuskan's claims can be disposed of on grounds that Tuskan has either conceded or abandoned those claims.

8

Tuskan concedes his claims for "conspiracy and neglect," abuse of process under § 1983, and violation of his First Amendment rights. *See* Mem. in Supp. of Resp. in Opp'n 5, 6-7 [65]. Tuskan also appears to have abandoned his malicious prosecution claim under § 1983. *Compare* Mem. in Supp. of Mot. for Summ. J. Based on Qualified Immunity 8-9 [61] (citing cases and asserting that there is no free-standing claim for malicious prosecution under § 1983), *with* Mem. in Supp. of Resp. in Opp'n 1-26 [65] (making no mention of his malicious prosecution claim under § 1983). As a result, Byrd and Thornton are entitled to judgment as a matter of law as to Tuskan's claims for "conspiracy and neglect[,]" malicious prosecution and abuse of process under § 1983, and violation of Tuskan's First Amendment rights.[4]

2. <u>Byrd is Entitled to Judgment as a Matter of Law as to Tuskan's Claims for False Arrest and Unreasonable Seizure/False Imprisonment</u>

The record makes clear that Byrd is entitled to summary judgment on these claims on the basis of qualified immunity. While Tuskan points to allegations in the Complaint related to Byrd and offers conclusory argument of counsel as to policies and practices that Byrd "ratified" and "sanctioned," Tuskan offers no evidence to overcome Byrd's assertion of qualified immunity. *See, e.g.*, Mem. in Supp. of Resp. in Opp'n 7, 8, 18 (relying on allegations in the Complaint and contending without

---

[4] To the extent that the Complaint may be construed as asserting a claim for defamation under federal law, the Court finds that Byrd and Thornton would be entitled to qualified immunity as to that claim. *See* Compl. 7 [1]. Defamation "is not a constitutional tort." *Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir. 2003), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 948-49 (5th Cir. 2003) (citing *Paul v. Davis*, 424 U.S. 693, 712 (1976)). "Because the threshold immunity question is whether [Plaintiff has] alleged a clear constitutional harm, failure to do so results in dismissal of the claim." *Id.* (citation omitted). Byrd and Thornton are therefore entitled to judgment as a matter of law to the extent the Complaint is viewed as including § 1983 claim for defamation.

citation to evidence that Byrd "ratified" and "sanctioned" various actions taken by Thornton of which Tuskan complains); Tuskan Dep. 26:13-27:22, 29:23-30:1 [60-7] (acknowledging that he has no personal knowledge regarding whether Byrd was involved in any way in the investigation at issue or that Byrd told any JCSO employees to investigate him). Because Tuskan has not offered sufficient opposition, the Court finds that the record supports a finding that Byrd is entitled to qualified immunity as a matter of law.

In addition, Byrd is entitled to qualified immunity because the record evidence establishes no dispute of material fact that Byrd was not personally involved in the incidents of which Tuskan complains. "A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'" *Jones v. Lowndes Cty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) (quoting *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008)). "A supervisor is not personally liable for his subordinate's actions in which he had no involvement." *Id.* at 350 (quoting *James*, 535 F.3d at 373). "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

"A supervisor may also be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Id.* (quoting *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009)). "[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Goodman*, 571 F.3d at 395 (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).

Tuskan has not submitted any competent summary judgment evidence indicating that Byrd affirmatively participated in the acts that caused Tuskan's alleged constitutional deprivations, or that Byrd implemented any unconstitutional policies that causally resulted in the purported constitutional injuries. Nor has sufficient proof been submitted that Byrd failed to adequately supervise or train Thornton. According to Thornton, she "did not receive any instructions from Mike Byrd to investigate or arrest Ronald Tuskan, nor did [she] ever speak with Mike Byrd regarding the prosecution of Mr. Tuskan." Aff. of Hope Manning (formerly Thornton) ¶ 7 [60-8]. Thornton also detailed training she has received regarding Internet Crimes Against Children ("ICAC"). *Id.* at ¶¶ 8-9.

Tuskan makes general and unsupported allegations that Byrd "issued instructions and promulgated policies and procedures for the Jackson County Sheriff's Department that directly caused violations of constitutional and civil rights

of numerous individuals in the community, including [Tuskan]," and that Tuskan was arrested because Byrd "wanted to find some way to arrest" an individual who lived on the same street as Tuskan, "who would not agree to publically [sic] endorse Mike Byrd during his re-election campaign." Pl.'s Answers to First Set of Interrogs. 3-4 [60-5]. However, Tuskan has not submitted, and the record does not contain, any competent evidence beyond Tuskan's unsupported allegations and inferences in this regard. Tuskan offers no evidence of any official policy or procedure which causally resulted in a violation of his rights. Insofar as he asserts an inadequate training claim related to Byrd, Tuskan has not alleged with specificity how any training program was defective. *See Goodman*, 571 F.3d at 395.

Tuskan "bears the burden of proving that a government official is not entitled to qualified immunity." *Michalik*, 422 F.3d at 258 (citation omitted). In satisfying his burden of negating Byrd's qualified immunity, Tuskan "cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Id.* at 262 (citation omitted). Based on the record before the Court, Tuskan has not created a material fact question regarding Byrd's supervisory liability, and Byrd is entitled to summary judgment on Tuskan's federal claims against him.

 3. <u>Thornton is Entitled to Qualified Immunity With Respect to Tuskan's False Arrest Claim</u>

Tuskan's claim for false arrest derives from his clearly established Fourth Amendment right to be free from unreasonable seizures of his person. Tuskan

claims that he was "unreasonably detained and held for in excess of two hours," which Tuskan contends creates a jury question related to whether Thornton detained Tuskan "directly or pursuant to her instructions to Deputy Porter." Mem. in Supp. of Resp. in Opp'n 11 [65]. Tuskan further asserts that Thornton did not have probable cause to detain him because Thornton "still had . . . hurdles to clear before any reasonable police officer would believe there was probable cause to arrest" Tuskan at his place of work. *Id*. at 13-15. According to Thornton, even if she caused Tuskan to be detained, she arguably had probable cause to do so, such that she is entitled to qualified immunity as to Tuskan's false arrest claim. Rebuttal 2-3 [66].

To establish a violation of his Fourth Amendment right to be free from an unreasonable seizure of his person, Tuskan "must show that [Thornton] lacked probable cause." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009); *see also Rhodes v. Prince*, 360 F. App'x 555, 558 (5th Cir. 2010) ("To prevail on his Fourth Amendment false arrest claim, [Tuskan] must sufficiently allege (1) that he was arrested, and (2) the arrest did not have the requisite probable cause.") (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004)). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000) (citation omitted). "As applied to the qualified immunity inquiry, [Tuskan] must show that [Thornton] could not have reasonably

13

believed that [she] had probable cause to arrest [Tuskan] for any crime." *O'Dwyer v. Nelson*, 310 F. App'x 741, 745 (5th Cir. 2009) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

Here, even assuming that Thornton could be said to have arrested Tuskan, the record reveals that Thornton arguably had probable cause to do so based on the evidence she had at the time that child pornography had been downloaded at Tuskan's IP address. By the time the purported arrest was made, Thornton had obtained information indicating that IP address 174.126.136.2 had downloaded what constituted child pornography. Investigator's Report 1 [60-1]. Pursuant to a grand jury subpoena she served upon Cable One,[5] Thornton had received information that IP address 174.126.136.2 was assigned to Tuskan. *Id.* at 3 [60-1]. Nevertheless, when Thornton made contact with Tuskan, Tuskan denied that he was involved with the download of child pornography using his IP address. Tuskan Dep. 15:3-10 [60-7].

Under such circumstances, the Court finds that the totality of facts and circumstances known to Thornton at the time of the alleged arrest of Tuskan were sufficient to establish arguable probable cause notwithstanding the fact that it was later discovered that Tuskan's personal computer did not have evidence of child pornography on the computer. *See, e.g.*, *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008) ("A mistake reasonably made as to probable cause justifies qualified

---

[5] Tuskan takes issue with the manner in which Thornton used the grand jury subpoena to obtain this information from Cable One, but Tuskan offers nothing more than his own unsupported argument to assert that Thornton's use of the grand jury subpoena was improper. This is insufficient to meet Tuskan's burden on summary judgment on the issue of qualified immunity. *See RSR Corp.*, 612 F.3d at 858 ("[T]he party opposing summary judgment [must] identify specific evidence in the record and [to] articulate precisely how this evidence supports his claim.").

immunity."). Because reasonable officers could disagree on whether probable cause existed to arrest, Thornton is entitled to qualified immunity. It is thus unnecessary to determine whether Thornton directly or indirectly ordered that Tuskan be detained, because even if she did, Thornton is entitled to qualified immunity as a matter of law on Tuskan's Fourth Amendment claim for false arrest.

    4.    <u>Thorton is Entitled to Qualified Immunity as to Tuskan's Fourth Amendment Claim for Unreasonable Search of His Home</u>

Tuskan's claim related to the reasonableness of Thornton's search of Tuskan's home and personal computer derives from Tuskan's clearly established Fourth Amendment right to be free from unreasonable searches. In seeking to defeat Thornton's qualified immunity on this claim, Tuskan takes issue with the manner in which Thornton gathered evidence but relies primarily on conclusory argument without citation to legal authority. Mem. in Supp. of Resp. in Opp'n 7 [65]. Tuskan also contends that Thornton did not obtain a warrant to search Tuskan's home and coerced Tuskan's consent to perform the search. *Id*. at 15-26.

Tuskan has not carried his burden of overcoming Thornton's qualified immunity related to a Fourth Amendment claim for an unreasonable search. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) ("When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."). As an initial matter, any allegedly coerced consent by Tuskan does not preclude Thornton's assertion of qualified immunity because at the time Thornton approached Tuskan and sought to obtain his consent

to search his home, Thornton had already obtained valid Search Warrants. The "Search Warrant - Ingalls" indicates it was signed by the County Court judge at "1040 hours" on June 1, 2011. Search Warrant - Ingalls 2 [60-2]. The "Search Warrant - Miller Street" indicates it was signed by the County Court judge at "1045 hours" on June 1, 2011. Search Warrant - Miller Street 2 [60-3]. Thornton "personally obtained the Search Warrants[,]" and her Investigator's Report confirms that the "Search Warrant - Miller Street" had been obtained prior to the search of Tuskan's home and personal computer, which search took place after 11:30 a.m. on June 1, 2011. *See* Thornton Aff. ¶ 5 [60-8]; *see also* Investigator's Report 3 [60-1]. In addition, Tuskan has not produced any summary judgment evidence contradicting the record as it relates to the timing or validity of the Search Warrants. *See, e.g.*, Tuskan Dep. 16:5-15 [60-7]; *see also Williams v. Kaufman Cnty.*, 352 F.3d 994, 1008 (5th Cir. 2003) (recognizing that the existence of a valid search warrant, issued by a neutral magistrate, establishes probable cause).

There being no evidence that Tuskan's consent was even necessary, the record supports a finding that Tuskan has not established a constitutional violation stemming from the search of his home and personal computer. At the time Thornton sought the Search Warrants for Tuskan's home and office, Thornton suspected that Tuskan had downloaded child pornography. Investigator's Report 3 [60-1]. Thornton did not attempt a warrantless search, but instead, Thornton personally obtained the Search Warrants for Tuskan's home and office, and a County Court judge, after an independent determination, issued the Search Warrants. Thornton

Aff. ¶ 5 [60-8]; Search Warrant - Ingalls 1-2 [60-2]; Search Warrant - Miller Street 1-2 [60-3]. There is no evidence that Thornton exceeded the scope of the Search Warrants, and once Thornton learned that there was no evidence of child pornography on Tuskan's personal computer and that Tuskan had an open wireless internet network through which neighbors within 250 feet of his home could gain access to the internet, Thornton ceased her investigation of Tuskan. *See* Investigator's Report 3 [60-1]; Tuskan Dep. 24:1-10 [60-7].

Thornton soon confirmed that child pornography had in fact been downloaded using Tuskan's IP address, but using a computer possessed by one of Tuskan's neighbors. Investigator's Report 3 [60-1]; Tuskan Dep. 32:15-21 [60-7]. This evidence makes plain that Thornton acted in a reasonable, good-faith manner in performing a search of Tuskan's home and personal computer, and Thornton is entitled to the benefit of qualified immunity as to Tuskan's Fourth Amendment claim alleging an unreasonable search. *See, e.g., Roderick v. City of Gulfport, Miss.*, 144 F. Supp. 2d 622, 628 (S.D. Miss. 2000) ("[A]n officer who executes a search warrant in a reasonable, good-faith manner is not liable under § 1983 for execution of the warrant, even if the judge or magistrate who issued the warrant did so in error.").

    5.    <u>Byrd and Thornton are Entitled to Judgment as a Matter of Law as to Tuskan's Abuse of Process Claim under State Law</u>

The Court also finds that Tuskan has not met his summary judgment burden in response to Thornton and Byrd's argument that they are entitled to summary

judgment as to Tuskan's abuse of process claim under state law. "[T]he three elements of abuse of process are: (1) the party made an illegal use of a legal process, (2) the party had an ulterior motive, and (3) damage resulted from the perverted use of process." *Ayles ex rel. Allen v. Allen*, 907 So. 2d 300, 303 (Miss. 2005) (citing *McLain v. West Side Bone & Joint Ctr.*, 656 So. 2d 119, 123 (Miss. 1995)). Tuskan offers no evidence or argument indicating that Byrd was personally involved with regard to any of these elements.

As for Thornton, Tuskan cites no legal authority to support his contention that Thornton's use of a grand jury subpoena constituted "making illegal use of process," but instead appears to request that the Court infer such a conclusion. *See* Mem. in Supp. of Resp. in Opp'n 7. Even if an illegal use of process were established, Tuskan's own testimony precludes a showing that Thornton possessed "an ulterior motive." *See* Tuskan Dep. 27:3-28:1 (stating that he had never met Thornton before June 1, 2011, and acknowledging that he had no reason to think there was an improper reason underlying the investigation or that Thornton "was out to get" him). Consequently, Byrd and Thornton are entitled to judgment as a matter of law as to Tuskan's claim for abuse of process under state law.

### III. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment Based on Qualified Immunity should be granted.

**IT IS**, **THEREFORE**, **ORDERED AND ADJUDGED** that the Motion for Summary Judgment Based on Qualified Immunity filed by Defendants Mike Byrd

and Hope Thornton is **GRANTED**.  Plaintiff Ronald Tuskan's First Amendment claim, § 1983 claims for false arrest, false imprisonment, and unreasonable search, malicious prosecution, and abuse of process, his § 1985 claims for "conspiracy and neglect[,]" and his state law claim for abuse of process are **DISMISSED WITH PREJUDICE**.  As all claims asserted against them in this case have been dismissed, Defendants Mike Byrd and Hope Thornton are **DISMISSED** as parties to this case.  Tuskan's federal and state law claims against Defendant Jackson County, Mississippi, remain pending at this time.

**SO ORDERED AND ADJUDGED**, this the 25th day of September, 2015.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE